THE PEOPLE OF THE STATE OF NEW YORK ex rel. JACK M. FEINBERG et al., Relators, against ALGER B. CHAPMAN et al., Constituting the Tax Commission of the State of New York, Respondents.

Third Department, March 9, 1949.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General,* and *John C. Crary, Jr., Assistant Attorney-General,* of counsel), for respondents.

*Charles A. Schneider,* attorney (*Joseph R. Apfel* and *Jack Turret* of counsel), for relators.

HEFFERNAN, J. Relators, J. M. Feinberg and William Sussman, are salesmen, with an office in New York City, engaged in the sale of furniture for two companies, the Fox Manufacturing Company of Rome, Georgia, and the Lenoir Furniture Corporation, Lenoir, North Carolina, and their subsidiaries. These men have been associated in their joint enterprise for a period of more than sixteen years. Prior thereto each operated independently in his own line of endeavor.

Their purpose in uniting their services and pooling their interests was to save expenses and to enable them as joint principals to offer a more advantageous sales service to factories desiring to utilize it and by this expedient to materially increase their earnings. The arrangement, whether it be labelled a partnership or by any other appellation, was certainly to their advantage.

The assessments in issue were based on the theory that relators composed a partnership known as Feinberg & Suss-

man which was engaged in supplying sales service to manufacturers from which it derived a net income subject to tax under article 16-A of the Tax Law.

The question presented to us for decision is whether relators are employees and as such exempt under the statute from the unincorporated business tax or whether their association is of such a nature as to subject them to the tax.

The statutory provision involved is section 386 of the Tax Law which we quote in full: "For the purpose of this article, if not inconsistent with its provisions and unless otherwise required by its context, the definitions contained in section three hundred fifty of this chapter shall be applicable and, in addition, *the words ' unincorporated business ' mean any trade, business or occupation conducted or engaged in by an individual, statutory or common law trust, estate, partnership or limited or special partnership, society, association, executor, administrator, receiver, trustee, liquidator, referee, assignee, or by any other entity or fiduciary, other than a trade or business conducted or engaged in by any corporation,* or by any other entity subject to the tax imposed by articles nine, nine-a, nine-b or nine-c of this chapter, and include any trade or business which if conducted or engaged in by a corporation would be taxable under any of said articles; but exclude the practice of law, medicine, dentistry, architecture which under existing law cannot be conducted under corporate structure, and any other case in which more than eight per centum of the gross income is derived from the personal services actually rendered by the individual or the members of the partnership or other entity in the practice of any other profession and in which capital is not a material income producing factor. It is not intended that an individual, partnership or other entity, other than a dealer holding property primarily for sale to customers in the ordinary course of his trade or business, shall be deemed engaged in an unincorporated business solely by reason of the purchase and sale of property for his or its own account or that an owner, lessee or fiduciary shall be deemed so engaged solely by reason of the holding, leasing or managing of real property *or that an individual shall be deemed so engaged with respect to compensation for services rendered by him as an employee,* or as an officer of a corporation, society or association, or of a state, municipality or other political subdivision of a state, or as an executor, administrator, receiver, trustee, liquidator, referee, assignee or other fiduciary, unless such compensation consti-

tutes receipts of a business regularly carried on by such individual." (Emphasis supplied.)

The relators contend that the assessments are illegal and they predicate this assertion on the theory that they were each merely employees of the companies from which their joint income in the form of commissions was derived.

Respondents made a finding that " during the calendar years 1940 and 1941, and for several years prior thereto J. M. Feinberg and William Sussman were copartners acting as factory representatives under the name of Feinberg & Sussman with business address at 206 Lexington Ave., New York, N. Y." Our problem is to determine whether or not that finding is sustained by the evidence. If it is we must confirm the determination under review.

It is to be noted that the tax is imposed upon " an individual * *. * partnership " or any " other entity " engaged in conducting " any trade, business or occupation ". It is only " an individual " who is not to be deemed engaged in any unincorporated business with respect to " compensation for services rendered by him as an employee ". The statute in express terms imposes a tax upon the net income of every partnership not otherwise exempt.

Relators assert that they were not, in the strict sense, partners, but independent contractors and consequently immune from tax under article 16-A of the Tax Law.

The broad distinction in law between independent contractors, whose services constitute their own " business " though performed in the furtherance of the " business " of another (*Irwin v. Klein,* 271 N. Y. 477, 485), and employees wholly engaged in the business of their employers is clear enough. It is a question of control, in the absence of which there can be no finding of employment (*Matter of Sullivan Co.,* 289 N. Y. 110, 112). But the degree of control which must be reserved is one which the nature of the problem does not permit to be stated in terms of a precise mathematical formula (*Matter of Morton,* 284 N. Y. 167, 173). The various aspects of the relationship are to be considered in each case and where the court sits in review of the determination of an agency empowered to find the facts, the question is whether, upon the basis of the record presented, the determination is " clearly erroneous " as a matter of law (*Matter of Morton, supra; People ex rel. Hull* v. *Graves,* 289 N. Y. 173).

In their petition in this proceeding relators allege that it is instituted on their behalf as " copartners ". Partnership

income tax returns, as required by section 368 of the Tax Law, were filed by Feinberg & Sussman for each of the tax years in question, showing that similar returns were filed in 1938 and 1939, and showing net partnership income distributed equally to each relator as a partner in each year. The assessments in issue resulted from " audit of the partnership returns " as filed by the relators themselves. The response on behalf of relators to the Tax Commission's original communication in the matter stated that " The income of the partnership " was from " commissions only ".

The partnership agreement between relators is oral and terminable at will. The oral arrangements under which relators rendered their services to the furniture companies were made with both partners. There is no evidence in the record of individual arrangements by either relator with any or all of the furniture companies which retained them. In testifying as to their activities for the companies, Mr. Sussman constantly employed the collective " we ". The relators jointly hire and pay a stenographer and two subsalesmen. The receipts of the relators are in the form of commissions amounting to 5% from the Lenoir factories and 8% from Fox, received jointly. All expenses incurred are deducted from the entire gross income and the net remainder is divided equally between relators. There is no separation of income " so far as the partnership is concerned ". It is divided equally at intervals without reference to the individual efforts of relators.

No evidence was produced at the hearing with any apparent purpose of denying the existence of a real partnership between the relators in every sense. All that was said was clearly based on the representations put forth by relators themselves that they were partners and had conducted their activities as such. So far as appears, they dealt with each other, with the companies, and with their customers as partners. The name " Feinberg & Sussman " appeared on the show window of their office under the names of the factories, and was listed in the telephone book. There is no basis in the record to support the contention that the ostensible partnership was not an actual one.

In imposing the tax under article 16-A of the Tax Law, section 386 defines the unincorporated businesses subject thereto as " any trade, business or occupation " engaged in, not only by individuals, but by a partnership or * * * other entity ". For purposes of the tax a partnership is clearly treated as an unincorporated entity subject thereto with respect to its net income.

The exemption of ordinary individual employments from the breadth of the language imposing the tax is found in the sentence stating that an " individual " is not to be deemed engaged in an unincorporated business by virtue of compensation received as an " employee ". The exemption itself indicates that otherwise the definition would include even employments, but the exemption extends only to individuals and not to partnerships and the other associated entities upon which the tax is imposed. It follows that net income derived by a partnership from any occupation (other than the specific exceptions), whether or not it is an independent business and even though it might be considered a mere employment, is subject to the tax and not within the exemption therefrom.

Indeed, it is not necessary that the association engaged upon an income producing venture be a partnership in the " strict sense " to sustain the tax. Relators do not deny that their activities were carried on together in a long continued association. They argue that this was only to enable them to allocate between themselves the work which they jointly undertook to do and to pool their incomes. Section 386 of the Tax Law, specifically makes applicable to article 16-A the definitions contained in section 350 of article 16, and subdivision 11 of the latter expressly defines the word " partnership " as including " a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on ".

There is nothing in the record to indicate that relators were subject to direction or control by the concerns whose products they sold in the manner in which they were to make such sales. In the absence of such supervision and direction of the sales routine, salesmen do not become employees (*Matter of Sullivan Co.,* 289 N. Y. 110, *supra*; *Hakyl* v. *Drees,* 247 App. Div. 90, appeal dismissed, 272 N. Y. 577).

The relators were not confined to named prospects or to listed customers. Within varying limitations on lines of furniture and types of customers, all of which served merely to identify the ultimate results sought, they were free to procure and promote sales as they saw fit by their own methods and through their own contacts. The partners procured new accounts by their own efforts and sold where they chose within their territory. Their services and their method of rendering them are so closely akin to those of the taxpayer, held in *People ex rel. Wittich* v. *Browne* (270 App. Div. 774, affd. 296 N. Y. 720) to be an inde-

pendent contractor, as to be indistinguishable in principle. Like Wittich they were retained to render a general sales service. Like him they were subject from time to time to instructions or limitations with respect to particular lines of goods or types of customer but were free to act independently in carrying on the primary work of making sales. Whatever else they might do with respect to collection or other servicing of accounts was incidental to that main occupation (see *Hakyl* v. *Drees, supra*). Also like Wittich, relators' services were retained by more than one company without evidence of any arrangement between such companies dividing their time and efforts. In the absence of such arrangements it would be manifestly impossible for either company to exercise the close supervision and control required as a matter of law by the master and servant relationship.

Nor does it matter that they did not share in the losses and profits of their companies or receive any compensation other than commission. It is not claimed that they are subject to tax because they were either partners or investors in the furniture companies, but because they were engaged in their own venture of rendering service to such companies on contract. Neither is it persuasive that they did not have any physical assets or transferable investment in the business. This point was stressed in both *People ex rel. Luther* v. *State Tax Commission* (265 App. Div. 976, affd. 291 N. Y. 691) and *Matter of Connell* v. *State Tax Commission* (267 App. Div. 923, leave to appeal denied, 293 N. Y. 934). These both concerned sales agents, although in the field of insurance under general agency contract, and though the taxpayers were each retained by a single company and required to devote their time exclusively to it they were held taxable under article 16-A.

The determination should be confirmed, with $50 costs and disbursements.

Foster, P. J., Brewster, Deyo and Bergan, JJ., concur.

Determination confirmed, with $50 costs and disbursements.